**TENNECO EXPLORATION, LTD., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 80–1380.

United States Court of Appeals, Fifth Circuit.

July 2, 1981.

---

5.  On appeal, Taylor does not challenge the finding of negligence.

Phyllis Rainey, Houston, Tex., for Tenneco Exploration, Ltd.

A. Karen Hill, Jerome M. Feit, F.E.R.C., Washington, D. C., for respondent.

Before HENDERSON, ANDERSON and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge:

This case involves the review of two unreported orders of the Federal Energy Regulatory Commission (FERC). Tenneco Exploration, Ltd. applied for certificates of public convenience and necessity to sell certain Outer Continental Shelf gas at the section 109(a)(2) ceiling price under the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C.A. § 3319(a)(2). The Commission authorized Tenneco Exploration's sales at no more than the section 104 ceiling price of the NGPA. The issue in this case is whether the Commission properly concluded that section 104 rather than section 109 applied to the sales of gas involved here. This Court concludes that it did not, and accordingly sets aside in part and remands the orders of the Commission.

I. *Facts*

On June 1, 1977, Tenneco Exploration applied for two optional procedure certificates under 18 C.F.R. § 2.75 for certain natural gas to be produced from the Outer Continental Shelf. On November 9, 1978, when the NGPA became law, Tenneco Exploration's certificate applications were still pending before FERC. On February 16, 1979, Tenneco Exploration filed a motion to withdraw the optional procedure certificate applications so that it could seek certification of the gas sales at NGPA ceiling prices. The Commission granted this motion.

On October 31, 1979, Tenneco Exploration applied for the certificates at issue here. On December 3, 1979, FERC issued the requested certificates, conditioned to permit

collection of no more than the applicable maximum lawful price prescribed in NGPA § 104. On December 18, 1979, Tenneco Exploration filed a notice of acceptance of the certificates and at the same time requested rehearing of the order with regard to the pricing condition. Tenneco Exploration's position there, as it is here on appeal, was that the applicable maximum lawful NGPA price was the section 109(a)(2) ceiling price rather than the section 104 ceiling price. On January 18, 1980, the Commission granted rehearing of the order, and on March 19, 1980, denied rehearing. FERC maintained, as it does here on appeal, that the proposed sales are covered by section 104 and not by section 109 of the NGPA.

## II. Determination of the Applicable NGPA Pricing Category

Section 104 applies to "natural gas committed or dedicated to interstate commerce on November 8, 1978, and for which a just and reasonable rate under the Natural Gas Act was in effect on such date." Section 109(a)(2) applies to "natural gas committed or dedicated to interstate commerce on November 8, 1978, and for which a just and reasonable rate under the Natural Gas Act was not in effect on such date." Sections 104 and 109(a)(2) both require initially that on November 8, 1978, the gas be "committed or dedicated to interstate commerce," as that term is defined in section 2(18), 15 U.S.C.A. § 3301(18). Each section secondarily requires the exact converse of the other: a just and reasonable rate under the Natural Gas Act of 1938 (NGA), 15 U.S.C.A. § 717–717w, either was or was not in effect on November 8, 1978, for the gas.

There is no dispute in this case that the gas at issue was "committed or dedicated to interstate commerce" on November 8th within the meaning of the NGPA. Section 2(18)(A)(i) defines "committed or dedicated to interstate commerce" to include natural gas that is from the Outer Continental

Shelf, as is the case here. Additionally, section 2(18)(A)(ii) includes within the definition any "natural gas which, if sold, would be required to be sold in interstate commerce (within the meaning of the Natural Gas Act) under the terms of any contract." Before November 8, 1978, Tenneco Exploration had executed contracts to sell the gas in interstate commerce. For both these reasons, the gas at issue was "committed or dedicated to interstate commerce" on November 8th, which satisfies the initial test for pricing under sections 104 and 109. Resolution of this dispute with FERC turns instead on whether the second requirement of section 104, or its opposite in section 109, is met in this case.

The critical language in both sections 104 and 109 is "[gas] for which [an NGA rate] was [or was not] in effect." Tenneco Exploration's theory in support of its claim to section 109(a)(2) pricing hinges on the argument that section 104's second test requires that the gas be dedicated to interstate commerce within the meaning of the NGA. To be subject to an NGA rate, gas had to first come under the Commission's NGA jurisdiction; dedication to interstate commerce within the meaning of the NGA was the means by which such jurisdiction attached. Dedication of acreage under the Natural Gas Act requires not just a contract to sell the gas into interstate commerce, but actual sales in interstate commerce; this is unlike the NGPA's broader term "committed or dedicated." *Falcon Petroleum v. FERC,* 642 F.2d 780, 784 (5th Cir. 1981); *Conoco, Inc. v. FERC,* 622 F.2d 796, 797 (5th Cir. 1980). Tenneco Exploration did not commence deliveries of the gas at issue until after November 8, 1978. Therefore, the gas was not dedicated under the NGA on November 8th. Since it was not dedicated under the NGA on that date, Tenneco Exploration argues, the gas was not subject to an NGA ceiling price.[1]

---

1. In Tenneco Exploration's request for rehearing, it argued that because the subject gas was not flowing in interstate commerce on November 8, 1978, and therefore was not dedicated to interstate commerce under the NGA on that

date, no certificate was required for the sales of the subject gas. It did not use this argument— that the gas was not dedicated—in the petition for rehearing with regard to the correct NGPA pricing provision. FERC contends that this

■ FERC's argument to the contrary is that the language "in effect" in section 104 means only that there were natural gas rate orders in existence on that date that would apply to the gas if it had been sold in interstate commerce. While an agency interpretation of its own statute is generally given deference, *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1963), such deference evaporates when the agency's interpretation is clearly wrong or unreasonable, *Coca-Cola Co. v. Atchison, T. & S. F. Ry.*, 608 F.2d 213, 222 (5th Cir. 1979). This Court concludes that FERC's interpretation is clearly wrong.

To begin, FERC focuses inordinate attention on the phrase "in effect" and not enough on the equally important phrase "gas . . . for which." FERC's selective emphasis on the language of sections 104 and 109 places the focus of analysis on whether the Commission had promulgated wellhead price regulation orders. The language of sections 104 and 109, however, is more specific in its chosen focus. By referring to "gas . . . for which" an NGA rate was "in

effect," the NGPA expresses the intent that the gas at issue actually have been subject to an NGA rate. By moving from Commission rate orders generally to the specific gas involved, the analysis must accordingly shift from whether the Commission could regulate such gas if sold in interstate commerce, to whether the Commission did in fact have such jurisdiction with respect to the gas at issue.

A necessary predicate for NGA rate regulation to attach to producer sales of natural gas was that the sale must be a sale in interstate commerce for resale. NGA § 1(b), 15 U.S.C.A. § 717(b).[2] Normally, the producer must have had a certificate of public convenience and necessity before undertaking such a jurisdictional sale. NGA § 7(c)(1), *id.* § 717f(c)(1). Initiating sales in interstate commerce for resale without such a certificate, however, nonetheless subjected that gas to the Commission's rate regulation jurisdiction under the NGA. *See Cox v. FERC*, 581 F.2d 449, 450–51 (5th Cir. 1978). Nor did obtaining a certificate alone constitute dedication; physical deliveries of

Court may not consider the dedication argument because it is being used for the pricing issue for the first time on appeal. FERC relies on NGPA § 506(a)(4), 15 U.S.C.A. § 3416(a)(4), which provides that no objection to a FERC order shall be considered by the appellate court if that objection was not urged before the Commission in the application for rehearing, unless there was reasonable ground for the failure to do so. Tenneco Exploration did object to FERC's insistence that the gas was priced under § 104 rather than § 109. This does not mean that Tenneco Exploration can advance any theory in support of a general objection even though that theory was not presented to FERC. The purpose of § 506(a)(4) is to ensure that the Commission has an opportunity to deal with the difficulties presented by its action before the reviewing court intervenes. *See Pennzoil Co. v. FERC*, 591 F.2d 301, 306 (5th Cir. 1979) (construing NGA § 19(b), 15 U.S.C.A. § 717r(b), which has a "no objection" rule that is virtually identical to that in § 506(a)(4)). On the other hand, the error asserted in the petition for review need not follow precisely the objection asserted on rehearing as long as FERC was adequately apprised of the petitioner's contentions. *Id.* This Court holds that in this case the statute's purpose was satisfied. Tenneco Exploration did present the dedication argument to the Commission, though in the context of the issue of certification rather than

pricing. The Commission disposed of this argument in precisely the same way as it addresses it on appeal here. Therefore, the Commission was adequately apprised of the argument and used the opportunity to deal with it at that time.

Even if the statute had not been satisfied, it would be manifestly unjust not to consider this argument on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Martinez v. Mathews*, 544 F.2d 1233, 1237 (5th Cir. 1976). Tenneco Exploration's only other argument here, which is the argument it used below on the pricing issue, is that its application for an optional procedure certificate had waived the application of FPC national rates to its gas. The waiver in the optional procedure certificate becomes effective, however, only when the certificate is issued and accepted, and not on the application for the certificate. The optional procedure rate is also an NGA rate. This argument thus fails. Since FERC's action in the orders under review is incorrect, it would be manifestly unjust to subject Tenneco Exploration to that improper outcome even though it has objected all along.

2. After December 1, 1978, sales in interstate commerce no longer dedicate the gas under the NGA. NGPA § 601(a)(1), 15 U.S.C.A. § 3431(a)(1).

gas into interstate commerce, which is the initiation of the regulated service, must still have occurred. *Conoco*, 622 F.2d at 797.

■ In short, dedication by commencing interstate deliveries was the legal means by which gas was placed within the Commission's NGA rate jurisdiction. *See California v. Southland Royalty Co.*, 436 U.S. 519, 527, 98 S.Ct. 1955, 1959, 56 L.Ed.2d 505 (1978). The gas at issue here was not sold in interstate commerce for resale until after November 8, 1978. Consequently, it was not dedicated to interstate commerce within the meaning of the NGA on November 8th, and was therefore not subject to an NGA ceiling price on that date. That places the gas under section 109(a)(2) pricing (unless it qualifies for an incentive price category) rather than under section 104 pricing.[3]

FERC additionally argues that the NGPA definition of "committed or dedicated to interstate commerce" is applicable as if it were in effect on November 8, 1978; since this gas was "committed or dedicated" within the meaning of the NGPA, FERC argues, it was therefore subject to an NGA rate because such a rate would have applied had Tenneco Exploration sold its gas on November 8, 1978. FERC relies for its argument on language from *Conoco*, which states that Congress intended for the definition of "committed or dedicated to interstate commerce" under the NGPA to be applicable as if it were in force prior to the

effective date of the NGPA. *Conoco*, 622 F.2d at 798.

FERC is taking this Court's language out of context, however. Producers argued in *Conoco* for the use of the NGA meaning of dedication when applying NGPA § 601(a)(1)(A). The latter removes gas on December 1, 1978, from NGA jurisdiction if on November 8, 1978, that gas was not "committed or dedicated to interstate commerce." Since the test for application of section 601(a)(1)(A) turns on facts antecedent to the enactment of the NGPA, producers argued that only the NGA meaning of dedication could apply to those antecedent facts. Application of the narrower NGA meaning of dedication would have broadened the NGPA's limitation on NGA jurisdiction. This Court held, however, that it was the NGPA's definition of "committed or dedicated," and not the NGA meaning of dedication, that was used in section 601(a)(1)(A). The NGPA definition is thus to be applied to the antecedent facts as if the NGPA's definition were in effect on the antecedent date.

Here, the Commission is attempting to utilize the NGPA definition of "committed or dedicated" for the purpose of applying the NGA. This is improper. The converse of the holding of *Conoco* is equally true for this case: The Commission cannot attempt to use the NGPA definition for application of the NGA. *See* H.R.Rep.No. 1752, 95th

**3.** The Commission argues that Tenneco Exploration's challenge here is a collateral attack on FERC Order No. 72, Final Rule Adopting Regulations Implementing Section 109 (March 8, 1980), *aff'd, ECEE, Inc. v. FERC*, 645 F.2d 339 (5th Cir. 1981). Order No. 72, however, supports Tenneco Exploration and not FERC. There FERC stated that on "November 8, 1978, the Commission had in effect just and reasonable rates for all natural gas subject to the NGA except gas from Alaska and Hawaii." In other words, for dedicated gas in the lower 48 states there were NGA rates in effect. Again, the predicate for the application of any NGA rate was being subject to the NGA, which in turn requires that the gas be dedicated to interstate commerce within the meaning of the NGA.

FERC also tries to find support for its position in the legislative history. The Conference Committee Report to the NGPA states with regard to § 109(a)(2) that "[i]n determining

whether a 'just and reasonable' price ceiling has been established under the Natural Gas Act, the conferees do not intend to require that a certificate has been issued with respect to that gas." H.R.Rep.No. 1752, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, pp. 8800, 9007. This supports Tenneco Exploration rather than FERC, however. This statement reflects the legislative awareness that the commencement of sales in interstate commerce without a certificate nonetheless dedicates the gas to interstate service. *See Cox v. FERC*, 581 F.2d 449, 450–51 (5th Cir. 1978). Gas dedicated without a certificate would be subject to NGA rate regulation and thus is priced under § 104 rather than § 109 if it was so dedicated on November 8, 1978. Since the gas at issue here did not begin flowing in interstate commerce until after November 8th, it was not subject to an NGA rate on that date, and consequently comes within § 109(a)(2).

Cong., 2d Sess. 72 (1978), U.S.Code Cong. & Admin.News 1978, p. 8988 ("committed or dedicated to interstate commerce" is used solely for the purpose of the NGPA; definition does not create new obligations or expand NGA jurisdiction). Simply stated, the NGPA definition can only be used for applying the NGPA, while the meaning of dedication under the NGA can only be used for applying the NGA. To say that since the gas was "committed or dedicated" on November 8, 1978, an NGA rate would have applied to the gas if it had been sold on that date, is simply to restate the hypothetical application of the NGA utilized in NGPA § 2(18)(A)(ii): "committed or dedicated" gas is gas that, *if sold*, would be required to be sold in interstate commerce. The first test of sections 104 and 109, like section 601(a)(1)(A), requires the application of the NGPA definition of "committed or dedicated." The second test of sections 104 and 109 directs the application of the NGA alone. Such a direction requires that the NGA meaning of dedication must be used when applying the NGA.

FERC's interpretation is also inconsistent with the structure and purpose of the NGPA. This Court has already noted that the NGPA definition of "committed or dedicated to interstate commerce" is broader than the NGA meaning of dedication to interstate commerce. *Falcon*, 642 F.2d at 784. Simply entering into a contract to sell

gas in interstate commerce is sufficient to commit the gas to interstate commerce within the meaning of the NGPA, but actual sales of gas into interstate commerce are required for the gas to be dedicated within the meaning of the NGA. *Id.* The difference in scope in these two concepts relates directly to NGPA pricing policy. Section 104 incorporated by reference and carried forward prior FPC rate regulation. Gas that was subject to prior FPC rate orders was gas dedicated under the NGA. Congress thus continued prior ceilings on gas that otherwise needed no additional incentive in order for sales to occur. Also needing no additional incentive was gas already legally committed to interstate commerce, though not yet dedicated within the meaning of the NGA, because of a contract to sell the gas in interstate commerce, or because of the statutory requirement that Outer Continental Shelf gas must be sold in the United States.[4]

Section 109(a)(2) was thus designed to prevent windfalls to producers with respect to gas legally committed to interstate commerce, but not yet dedicated to interstate commerce within the meaning of the NGA. To soften the impact of this pricing policy, Congress specified the section 109 ceiling price as a dollar amount equal to the highest ceiling price available under prior FPC national rate orders, now the highest section 104 price. FERC's position undermines

---

4. Absent the express authorization of the President, gas produced from leases in the offshore federal domain must be sold in the United States. 43 U.S.C.A. § 1354. These sales of gas from the Outer Continental Shelf are sales in interstate commerce within the meaning of the NGA; NGA § 2(7), 15 U.S.C.A. § 717a(7), defines interstate commerce as commerce between any point in a state and any point outside thereof. Accordingly, Outer Continental Shelf gas could only be sold in interstate commerce; there was never a choice about selling the gas in the intrastate rather than the interstate market. That the gas had to be sold in interstate commerce does not, by itself, mean that the gas was dedicated to interstate commerce. A contract to sell gas to an interstate pipeline legally eliminates any similar choice about selling in intrastate versus interstate commerce. It is not until service is initiated by

the commencement of gas deliveries that the gas becomes dedicated to interstate service. FERC's attempt to rely on the limited choice of market for Outer Continental Shelf gas to say that such gas is dedicated even though no deliveries had yet commenced is to confuse the concepts of legally limited market choices and dedication of service to a regulatory obligation. Such confusion is understandable given the overlap between these concepts: the obligation to serve interstate commerce imposed by the dedication of gas legally limits the relevant market choices. But all legal restrictions on the market choice for gas sales do not operate to dedicate the gas under the NGA, as with contracts to sell gas in interstate commerce. In other words, while all music is sound, not all sound is music. The NGPA term "committed or dedicated" was designed to encompass these other legal restrictions on market choices.

this significance to the distinction between dedicated gas and gas that is legally committed but not dedicated.

This Court concludes that since the gas at issue was not subject to an NGA rate on November 8, 1978, section 104 is not the applicable maximum lawful NGPA price for this gas. Accordingly, the orders under review are set aside with regard to the pricing condition in the certificates. The orders are remanded to FERC in light of the foregoing.

SET ASIDE IN PART AND REMANDED.