894 F.2d 1396
 282 U.S.App.D.C. 356
 ANR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
MOBIL EXPLORATION & PRODUCING NORTH AMERICA, INC., et al., Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 88-1707, 88-1794.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 9, 1990.
Decided Feb. 6, 1990.
 
 Timm L. Abendroth, F.E.R.C., with whom Catherine C. Cook, General Counsel, and Joseph S. Davies, Deputy Sol., F.E.R.C., were on the brief, Joanne Leveque and Samuel Soopper, F.E.R.C., for respondent.
 Bernard A. Foster, III, with whom Daniel F. Collins was on the brief, for petitioner ANR Pipeline Co. in No. 88-1707.
 Douglas F. John, with whom Jay G. Martin was on the brief, for petitioners Mobil Oil Exploration and Producing North America, Inc. et al. in No. 88-1794.
 Before WALD, Chief Judge, RUTH B. GINSBURG, Circuit Judge, and ROBINSON, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.
 RUTH B. GINSBURG, Circuit Judge:
 
 
 1
 These consolidated cases arise from a contract dispute between petitioner gas-producer Mobil Exploration & Producing North America, Inc. (Mobil) and petitioner gas-purchaser ANR Pipeline Company (ANR). Mobil, alleging that the contracts governing its gas sales to ANR expired on October 24, 1980, sought a price increase effective retroactively as of that date. The Federal Energy Regulatory Commission (FERC or Commission) granted Mobil a rate increase effective February 24, 1986--thirty days after Mobil applied for the increase--rather than October 24, 1980, as Mobil had requested.
 
 
 2
 Both ANR and Mobil invite our review of the Commission's disposition: ANR contests the applicability of the higher rate and FERC's conclusion that Mobil could raise the rate unilaterally; Mobil challenges FERC's refusal to make the increase effective from the alleged contract expiration date. We grant ANR's petition for review because the Commission's determination that the higher rate applies did not reflect reasoned decisionmaking. We therefore remand, vacating the Commission's orders in the interim, without addressing ANR's other arguments and without considering Mobil's petition.
 
 I.
 
 3
 To place the facts of these cases in context, we first briefly describe, in relevant part, the pricing scheme for natural gas established by the Natural Gas Act (NGA) and the Natural Gas Policy Act of 1978 (NGPA). The NGPA contains two sections here implicated governing the maximum lawful price for natural gas, sections 104 and 109. Section 104, setting the lower of the two ceiling prices, applies to gas that was "committed or dedicated to interstate commerce [as that term is defined by the NGPA] on November 8, 1978, and for which a just and reasonable rate under the Natural Gas Act was in effect on such date for the first sale of such natural gas." 15 U.S.C. Sec. 3314.[1] The higher section 109 price, as germane here, can be obtained if the gas fits within the descriptions of either of two subsections: subsection 109(a)(2), which applies to gas committed or dedicated under the NGPA and not subject to an NGA rate on November 8, 1978, see 15 U.S.C. Sec. 3319(a)(2); or subsection 109(a)(3), which applies to gas not committed or dedicated under the NGPA and not subject to an existing contract on November 8, 1978. See 15 U.S.C. Sec. 3319(a)(3).
 
 
 4
 Complicating the scheme, the NGA and NGPA define "committed or dedicated" to interstate commerce differently. Under the NGPA provision in point, gas from the Outer Continental Shelf is, by definition, "committed or dedicated" to interstate commerce. See 15 U.S.C. Sec. 3301(18)(A)(i). However, the second inquiry under subsection 109(a)(2), i.e., was an NGA rate in force on the critical November 8, 1978 date, turns on whether the gas was, on that date, "committed or dedicated" under the NGA, as opposed to the NGPA; gas is "committed or dedicated" under the NGA if, and only if, deliveries of the gas have commenced. See Tenneco Explorations, Ltd. v. FERC, 649 F.2d 376, 378-81 (5th Cir.1981).
 
 
 5
 Turning to a synopsis of the case, in 1971, ANR's predecessor-in-interest (ANR) and Mobil (or its predecessors) entered into advance payment agreements that gave ANR the right to purchase all gas that Mobil produced from Block 306 on the Outer Continental Shelf. These agreements provided that the purchases would be effected through individual contracts from time to time. Mobil Exploration and Producing N. Am., Inc., 43 F.E.R.C. p 61,228 at 61,601 & n. 2 (1988). In 1972 and 1974, Mobil and ANR entered into four separate contracts, in which Mobil agreed to sell ANR specific quantities of gas. Shortly after the parties entered into each of these contracts, FERC issued certificates of public convenience and necessity to authorize the sales.
 
 
 6
 Since the enactment of the NGPA in 1978, ANR has paid Mobil the maximum price provided by section 104. So long as the 1972 and 1974 contracts were in force, this rate was indisputably correct, for the gas met both section 104 criteria: The gas was committed or dedicated under the NGPA because it was produced on the Outer Continental Shelf, and it was subject to an NGA rate because deliveries continued pursuant to agreements made before 1978.
 
 
 7
 On January 24, 1986, Mobil filed applications proposing certificate amendments to authorize collection of the higher section 109 price.[2] Mobil argued that, on or about October 24, 1980, the previous contracts had expired because Mobil had provided ANR the full volumes of gas specified under the contracts. Mobil maintained that its continued deliveries since that date, its acceptance of the section 104 price, and its execution of amendments to the contracts in 1981 and 1983 all had been made under the mistaken belief that the contracts were still in force. Mobil conceded that its continued deliveries since October 1980 obligated it to continue to sell gas to ANR. Mobil claimed nonetheless that it was entitled to the higher price retroactive to October 24, 1980, because on that date, the 1972 and 1974 contracts having expired, deliveries of "new" gas began.
 
 
 8
 ANR intervened in opposition to Mobil's request and argued that the post-1980 deliveries were merely continued sales of Block 306 gas, all of which had been dedicated to ANR under the advance payment agreements, and the implementing contracts and certificates. ANR also challenged, specifically, the accuracy of Mobil's claim that the contracts expired on October 24, 1980. See 43 F.E.R.C. at 61,101 & n. 1.
 
 
 9
 FERC rejected ANR's arguments that, prior to November 1978, all reserves underlying Block 306 had already been committed and dedicated to ANR by virtue of the advance payment agreements and subsequent contracts. The post-1980 gas, the Commission held, constituted a new stream of delivery pursuant to no previous agreement, and not gas already dedicated to interstate commerce within the meaning of the NGA. Id. at 61,603. FERC then declared that the deliveries were subject to the section 109 maximum price because the gas involved "was not committed or dedicated to interstate commerce" on November 8, 1978 and "was not subject to an existing contract on such day." Id.
 
 
 10
 FERC agreed with Mobil that the deliveries after October 1980 obligated Mobil to continue to sell all of its Block 306 gas to ANR. Analogizing the situation to one in which a "captive producer" is required by the NGA to continue sales after its contract has expired, FERC construed Mobil's amendment applications as rate increase filings, and authorized Mobil to charge the section 109 rate beginning February 24, 1986--thirty days after Mobil filed its amendment requests. Id. The Commission denied Mobil's plea for a waiver of notice requirements that would have allowed Mobil to collect the section 109 rate retroactively as of October 24, 1980. Id. at 61,603-04.
 
 
 11
 Both parties petitioned the Commission for rehearing: ANR challenged FERC's determinations that section 109 applied and that Mobil could unilaterally increase the rate. Mobil argued that the section 109 rate should have been applied from October 24, 1980, because ANR had impliedly contracted to pay the highest lawful price; alternatively, Mobil urged that there was good cause to waive the notice requirements. FERC denied rehearing, Mobil Exploration and Producing N. Am., Inc., 44 F.E.R.C. p 61,385 (1988), and both parties petitioned for review.II.
 
 
 12
 All the parties agree that FERC referenced the wrong statutory criteria in its holding that the section 109 price governs. FERC held that the section 109 rate applied because the post-1980 gas "was not committed or dedicated to interstate commerce on [November 8, 1978] and ... was not subject to an existing contract on such day." 43 F.E.R.C. at 61,603. This conclusion, which paraphrases the subsection 109(a)(3) criteria, is insupportable because the post-1980 gas comes from the Outer Continental Shelf and was therefore "committed or dedicated" under the NPGA definition of that term. See Brief for Respondent at 13 ("To be sure, as ANR points out, the Commission's finding that the gas at issue here was not committed or dedicated to interstate commerce on November 8, 1978 is at odds with Section 2(18)(A)(i) of the NGPA, which specifically provides that all gas from the Outer Continental Shelf is 'committed or dedicated to interstate commerce.' ").
 
 
 13
 ANR contends that FERC applied the NGA (in lieu of the NGPA) definition of "committed or dedicated," i.e., that deliveries must have commenced, see supra p. 1397, and then determined that subsection 109(a)(3) supported a section 109 price. If the Commission indeed meant to apply the NGA definition of "committed or dedicated" and to justify the section 109 rate under subsection 109(a)(3), the Commission acted contrary to law. See Conoco, Inc. v. FERC, 622 F.2d 796, 798 (5th Cir.1980) (when construing NGPA's use of phrase "committed or dedicated," court and Commission must use NGPA definition).
 
 
 14
 FERC's counsel and Mobil argue, however, that the Commission did not so intend. They maintain that the paraphrase of subsection 109(a)(3) in the Commission's opinion was a harmless drafting mistake. FERC's counsel and Mobil urge us to disregard the "harmless error" and read the Commission's orders, both initially and in denying rehearing, as basing the section 109 price allowance on subsection 109(a)(2)'s twin specifications: (1) gas committed or dedicated under the NGPA, for which (2) "a just and reasonable rate under the [NGA] was not in effect on [November 8, 1978]." See 15 U.S.C. Sec. 3319(a)(2).
 
 
 15
 Although FERC never homed in on the subsection 109(a)(2) formulation, and so made no express statement that an NGA rate was not in effect on November 8, 1978, the Commission explicitly held that the gas was not committed or dedicated under the NGA, and this determination is tantamount to a finding that no NGA rate was in force. Compare 43 F.E.R.C. at 61,603 with Tenneco, 649 F.2d at 378-81. In addition, the Commission recognized in a footnote that the gas, because it came from the Outer Continental Shelf, was indeed committed or dedicated applying the NGPA definition. See 43 F.E.R.C. at 61,603 n. 12.
 
 
 16
 Even if we were to indulge the assumption that the Commission intended to act under subsection 109(a)(2), however, we would find FERC's decision sufficiently problematic to remand for a second look. The Commission, as we previously recounted, see supra pp. 1398-99, typed the post-1980 gas as a new stream of delivery not governed by any prior agreement, thus not committed or dedicated under the NGA. In reaching that determination, FERC did not deal satisfactorily with precedent, failed adequately to respond to ANR's argument that the certificates authorizing sale of the gas survived the contracts, and never explicitly found that (and explained why) the contracts had in fact expired.
 
 
 17
 Most notably, FERC failed to address ANR's contention that a prior Commission decision had held that the advance payment agreements committed and dedicated all the Block 306 gas. In Superior Oil Co., 55 F.P.C. 3180, 3185 (1976), the Commission expressly found that "[Mobil] is bound by the terms of the advance payment agreements to enter into superseding gas purchase contracts if there are any additional reserves, subject to price revisions. There is no question of the dedication and commitment of the reserves [in Block 306] to Mich-Wisc [ANR's predecessor]." Superior may not mean what it appears to say of pre-1978 dedication and commitment; the Commission, however, not only failed to distinguish Superior, it neglected even to mention the case in its discussion of the advance payment agreements.[3]
 
 
 18
 Furthermore, FERC improperly relied on Texas Gas Transmission Corp., 32 F.E.R.C. p 61,121, reh'g denied, 32 F.E.R.C. p 61,465 (1985), to support its determination that only a limited volume of gas was dedicated by the agreements, contracts, and certificates. The Commission did hold in Texas Gas that gas above the amount specified in a contract was not committed by the contract. See Texas Gas, 32 F.E.R.C. at 61,325. The producer in Texas Gas, however, remained free to sell the surplus over the contract amount to anyone, while Mobil was required by the advance purchase agreements to sell all the Block 306 gas to ANR. Contrary to FERC's assertion in the opinion before us, 43 F.E.R.C. at 61,602, the producer's freedom in disposing of the surplus appears central to the holding in Texas Gas. See 32 F.E.R.C. at 61,325; see also Rocky Mountain Natural Gas Co. v. Greenberg, F.E.R.C. Docket No. GP88-25-000 at 5 & n. 15 (Nov. 27, 1989) (no limited dedication absent a specific contractual provision containing a surplus gas clause which limits the buyer's rights).
 
 
 19
 Nor did the Commission adequately respond to ANR's claim that certificates generally survive the contracts for which they are issued unless the certificates contain termination provisions or pregranted abandonment authorizations. Case law suggests that a certificate is generally of permanent duration if neither the certificate nor the application contains explicit limitations. See, e.g., Sun Oil Co. v. FPC, 364 U.S. 170, 174-75, 80 S.Ct. 1388, 1391, 4 L.Ed.2d 1639 (1960) (upholding Commission's determination that certificate was permanent when application did not ask for a limited certificate and certificate did not contain explicit limitations). The record does not provide enough information to determine if each certificate or corresponding application contained volume limitations.[4] FERC's sole response to ANR's argument was: "We find such provisions [i.e., termination provisions or pregranted abandonment authorizations] do not affect the scope of the dedications." 43 F.E.R.C. at 61,602. More than this Delphic statement was necessary.
 
 
 20
 Finally, FERC's initial order did not decide the crucial question whether the contracts had actually expired on October 24, 1980, although the Commission acknowledged that ANR challenged Mobil's assertion that they had. See 43 F.E.R.C. at 61,601 n. 1. The order denying rehearing simply stated, with no elaboration, that the contracts had expired and did not respond to ANR's evidence to the contrary--the continued deliveries of gas at the contract price and Mobil's amendments to the contract after the alleged expiration date. See 44 F.E.R.C. at 62,252.
 
 
 21
 The orders leave little doubt that the Commission implicitly concluded that the contracts had expired. FERC's failure to make an explicit finding and to explain its reasoning might have been excusable if the contracts' expiration were not contested or if Mobil had presented evidence of expiration bearing out its averral. But the expiration was contested, and Mobil, as applicant, had the burden of proof. See American La. Pipe Line Co., 13 F.P.C. 1245 (1954). Under these circumstances, we cannot conclude that FERC's implicit finding was supported by substantial evidence.
 
 
 
 For the foregoing reasons, we grant ANR's petition for review, vacate the Commission's orders, and remand the matter to the Commission for reconsideration responsive to the concerns expressed in this opinion.
 It is so ordered.
 
 
 [1]
 Congress chose November 8, 1978 as the significant date because it was the day before the enactment of the NGPA. See Pub.L. 95-621, 92 Stat. 3352 (Nov. 9, 1978) (codified as amended at 15 U.S.C. Secs. 3301-432)
 
 
 [2]
 In its brief, FERC claimed that ANR began paying section 109 prices following Mobil's filing. Brief for Respondent at 5 ("[I]n 1986, in the wake of Mobil's filings at issue here, Mobil began to collect, and ANR to pay, the NGPA Section 109 price."). ANR denied this claim, and the Commission conceded at oral argument that the assertion in its brief was unsupported by the record and incorrect. The court anticipates that FERC and its counsel will henceforth take special care to check the accuracy of any factual representations made to the court. Such care, always warranted, is all the more essential when counsel is endeavoring, as in this case, to justify a Commission decision displaying flaws or gaps in stating the matter in controversy
 
 
 [3]
 FERC properly relied on Superior to refute ANR's argument that the individual contracts, which contained volume and depth limitations, should nonetheless be interpreted to dedicate all the gas in Block 306. But Superior appears to support ANR's distinct argument that the advance payment agreements committed and dedicated all the gas. The Commission might have argued that Superior cannot mean that the agreements committed the gas if this meaning would freeze the price because the agreements contemplated "price revisions." But FERC did not so argue. Moreover, FERC would still have had to demonstrate that the agreements contemplated unilateral price increases
 
 
 [4]
 The order issuing two of the certificates limited their authorizations to the quantities stated in the contracts, and two of the applications also specified the limited nature of the dedications. See 43 F.E.R.C. at 61,601. The applications and certificates were not part of the record, however, so the court could not eliminate the possibility that one of the certificates was limited by neither the issuing order nor the application